WICHITA MINING & IMPROVEMENT CO. v. HALE *et al.*

No. 1895, Okla. T.    Opinion Filed Feb. 3, 1908.

(94 Pac. 530.)

1.    APPEAL—Review—Finding of Referee—Presumptions.  Where the findings of fact of a referee are in the main based upon the issues joined by the pleadings, it must be presumed by this court, in the absence of the evidence from the record, that there was sufficient testimony introduced at the trial to warrant the findings.

2.    SAME—Sufficiency of Evidence—Insufficient Record.  Where a cause is referred to a referee to find and report the facts and conclusions of law to the court, and no bill of exceptions is allowed and signed by the referee, preserving the evidence, the court cannot consider the question of the sufficiency of the evidence to support the findings of the referee.

(Syllabus by the Court.)

*Error from District Court, Comanche County; before Frank E Gillette, Judge.*

Action by the Wichita Mining & Improvement Company, consolidated, against J. M. Hale and Bessie Hale. Judgment for defendants, and plaintiff brings error. Affirmed.

*Shartel, Keaton & Wells,* for plaintiff in error.
*James A Morris,* for defendants in error.

KANE, J.   The statement of counsel for plaintiff in error in their brief sufficiently states the issues joined by the pleadings in the court below, upon which the findings of fact and conclusions of law of the referee should be based.   The statement follows:

"This action was commenced in the district court of Comanche county, Oklahoma Territory, by the above-named plaintiff in error (plaintiff below) against the above-named defendants in error (defendants below), on the 22d day of October, 1902, by the filing of a petition alleging in substance the following material facts, to wit:   That on the 29th day of June, 1901, defendant J. M. Hale, by written contract, for the consideration therein expressed, sold, assigned, and conveyed to plaintiff certain mining claims, situated in the counties of Kiowa and Comanche, naming and describing them; that on October 11, 1901, said defendant J. M. Hale entered into another written contract with plaintiff modifying and changing the original agreement, to the extent that said defendant should receive $100,000 of the capital stock of plaintiff (it being capitalized at $500,000) in full for his interest in said mining claims, and that some of the names of the claims listed in said previous written contract were changed or omitted; that under and by virtue of said contracts plaintiff went into possession of said claims, employed defendant J. M. Hale to superintend the development work to be done on same, and furnished him certain sums of money for that purpose, but that the money so furnished was recklessly and extravagantly expended by him, and no proper or accurate account was ever rendered by said Hale to plaintiff showing that same had been properly used in developing said mining claims; that said defendant J. M. Hale ignored the instructions given him by the officers of said company relative to the work that should be done on said claims, and was, in his personal dealings with, and attitude toward, said officers, overbearing and threatening and finally, during the summer of 1902, when certain of said officers and stockholders of said company visited him, informed them that they had no right, title, or interest in said claims, and that same were owned by himself and his wife, Bessie Hale, and that he would not permit said officers, or their employes, to further develop said mining claims, and threatened to kill any person whom the officers of said company should put to work thereon;

that all of said mining claims are located upon the public lands of the United States, and under the federal law certain annual assessment work, to the amount of $100 each year, must be done on each and every claim in order to properly protect the right, title, and interest of plaintiff therein, and to prevent same from being relocated by other parties; and that said defendant J. M. Hale fraudulently conveyed, or attempted to convey, certain of said mining claims to his wife, Bessie Hale, for the fraudulent purpose of defeating the right and title of plaintiff thereto; that to carry out this said fraudulent purpose on the part of both of said defendants said J. M. Hale, subsequent to the transfer of said mining claims to plaintiff, changed the names of several of them; that defendant J. M. Hale, together with his family, is occupying a house erected by plaintiff on one of said claims, to wit, the Golden Run (afterwards called 'Hale Lode'), and refuses to surrender the possession thereof to plaintiff; that the officers of plaintiff have been informed and verily believe that said defendant J. M. Hale has carried from the said mining claim on which said house is erected, to wit, Golden Run, several tons of high grade copper ore to a smelter located in the vicinity thereof, to have same treated and mineral extracted therefrom, with the intent and purpose of converting same to his own use and benefit. In view of all which plaintiff prayed for judgment restraining and enjoining said defendant J. M. Hale from interfering with plaintiff's use and occupation of any of said mining claims and from in any way interfering with the plaintiff's agents or employes in developing and operating same, and from removing any ore from any of them, and from converting to his own use any of said mining claims so conveyed by him to plaintiff, and that defendant Bessie Hale be restrained and enjoined from disposing of or attempting to dispose of, any of said mining claims placed in her name, and that the fraudulent transfer thereof by defendant J. M. Hale to her be declared void and of no effect, and a decree entered canceling said pretended conveyance, and declaring plaintiff to be the rightful owner and entitled to the rightful possession thereof, etc.

"Thereafter, and on the 23d day of October, 1902, a temporary restraining order against defendant J. M. Hale was granted on the application of plaintiff. Thereafter, and on the 20th day of November, 1902, said defendants filed a motion to dissolve the writ of injunction.

"Thereafter, and on January 27, 1903, by leave of court first obtained, plaintiff filed in said cause its amended petition stating in more details some of the matters alleged in the original petition and several new matters, among the latter being allegations to the effect that J. M. Hale was employed by plaintiff as its foreman to do the development work on said mining claims, and that it had furnished him for that purpose between $900 and $1,200; that plaintiff was unable to hire competent and peaceful miners to develop said mining claims by reason of the threats of defendant J. M. Hale to kill any one who should undertake such work at the instance of plaintiff; that defendant J. M. Hale conspiring with his wife, Bessie Hale, filed in the office of the register of deeds of Comanche county location certificates for certain of said mining claims, in the name of said Bessie Hale. with the intent to defraud plaintiff, and that defendant Bessie Hale at the time knew of the right and title of plaintiff to all of said claims, and that she, in fact, had no right, title, or interest therein; that defendant J. M. Hale for the purpose of preventing the officers of plaintiff from taking any appropriate action to protect its right and title to said mining claims represented to them, both verbally and by letter, that he had made some of said certificates to his wife and changed some of the names, and that she was holding them for the purpose of keeping one Ford, an alleged former partner of J. M. Hale, from claiming a half interest therein; that plaintiff never authorized or approved these acts, and that same were done for the purpose of defrauding it as aforesaid; that on the 13th day of March, 1902, said defendant, J. M. Hale, wrote to C. F. Colcord, the president of plaintiff corporation, a letter in which he said: 'All of the mines were turned over to my wife in September last. They are not in my hands at all.'

"Thereafter, and on January 28, 1903, the district court of said Comanche county passed an order referring said cause to James F. Steck, as referee, to settle the issue therein, hear the testimony, and make findings of fact and conclusions of law thereon.

"Thereafter, and on April 15, 1903, each of said defendants filed in said cause a separate answer to the amended petition of plaintiff. In his said separate answer J. M. Hale specifically denies that plaintiff 'ever paid to him $800 or any sum whatsoever'; that he ever sold to plaintiff 'all his mines situated in

the counties of Comanche and Kiowa, Territory of Oklahoma';
that plaintiff ever delivered to him $100,000 of its paid up stock;
that he ever executed any instrument conveying title of his dif-
ferent mines situated in the counties of Kiowa and Comanche
to plaintiff; and that the plaintiff 'ever done any work upon said
mines or caused same to be done with his knowledge or consent,
and that if same was done by plaintiff in this case it was un-
authorized.'    Further answering, he admits the execution of the
written contract dated June 29, 1901, agreeing to sell to the
'Wichita Mining & Improvement Co. a four-fifths interest in his
mines,' but alleges that said written instrument was only a propo-
sition to sell a four-fifths interest in said mines, which was not
to become effective or operate as a conveyance of the said four-
fifths' interest until said written instrument was signed in the
manner therein designated, which was never done, and that the
said Wichita Mining & Improvement Co. never in any event
performed the terms of said agreement on its part, in that it
failed to perform the required development work, or any part
thereof, upon each one of said mines in order to hold same as
required by law, and that it therefore forfeited any right it might
have had in the said mines; that the Wichita Mining & Improve-
ment Co. is not a corporation but a copartnership, doing busi-
ness under a fictitious name, and that it has not complied with
the law requiring the filing of a certificate showing the names
of all the partners, etc., and therefore has no right to maintain
this action.   He also admits having received from C. F. Colcord,
and others acting as officers and agents of the Wichita Mining
& Improvement Co. the sum of $724.50 as salary.

"In her separate answer, Bessie Hale denies generally all of
the allegations contained in plaintiff's amended petition and
specifically denies 'that she ever entered into collusion with her
husband, J. M. Hale, or any one else, to defeat or cheat the
plaintiff in this action in any manner whatsoever,' and 'that she
ever filed any mineral location certificates for the use and benefit
of any one else,' and thereafter alleges that she is the present
owner and discoverer of certain of said mining claims, to wit,
'Dome Mountain,' 'Santataka,' 'Amythist,' 'Hale Ledge or Lode,'
and 'Park Lodge,' which latter she claims to have purchased from
defendant J. M. Hale on the 29th day of September, 1901, by
instrument of writing, which was filed for record in the office of
the recorder of deeds for Comanche county on January 20, 1902;

and she thereupon prays that plaintiff take nothing against her and that the court decree 'that she is not holding said property in trust, and that said injunction as applied to her be dissolved,' etc.

"Thereafter, and on the 25th day of April, 1903, plaintiff filed in said cause its reply to the separate answers of said defendant, denying each and every material allegation contained in each of said answers, except such as admit the allegations contained in plaintiff's petition.

"Thereafter, and on December 1, 1903, defendant J. M. Hale, by leave of court first obtained, filed in said cause his amended answer, restating all the matters and things alleged in his original answer, and adding thereto paragraph 15 wherein he charges that the officers and agents of plaintiff represented to him that they, or at least a portion of the individuals composing said company, were men of wealth and financial standing and with money to invest, and would invest their money in the development of the property belonging to defendant (meaning said mining property) ; that the stock of said corporation was worth 100 cents on the dollar, and that defendant having no means to ascertain the contrary, and believing said officers and their said representations, and 'was led to believe and did believe that the stock he was to get was worth $100,000, when in truth and in fact, all of said representations were wholly false and untrue, and known to be so by the parties making them at the time they were made,' and that in his opinion said stock is not worth one cent on the dollar, and, as a climax, to this already somewhat evasive and contradictory answer, he further says: 'And while this defendant denies ever having received the stock to the face value of $100,000, that the same was not worth anything, and this defendant alleges that by attempting to palm off on him stock that is worthless and failing to do work on said claims, the plaintiff company and its officers are attempting to defraud and cheat this defendant out of all his mining properties mentioned in plaintiff's petition.' "

On the issues thus joined the referee made his findings of fact and conclusions of law, both being in favor of the defendants in error, and the court approved the report of the referee, and ordered judgment in conformity to the report of the referee.

The assignments of error relied upon by plaintiff in error to

reverse the judgment of the court below are as follows: (1) "The findings of fact made by the referee and approved by the trial court, and which were duly excepted to by plaintiff, are incomplete, inconsistent with each other, and, in many instances, not only unsupported by the testimony, but contrary thereto." (2) "The conclusions of law made by the referee and approved by the trial court, and which were duly excepted to by plaintiff, being based upon said erroneous findings of fact, are inapplicable to the real facts disclosed by the record, and mostly incorrect as abstract propositions."

From these assignments it will be seen that all the propositions presented by plaintiff in error are dependent upon an examination of the evidence for their determination except that part of the first assignment which states that the findings of fact made by the referee are incomplete and inconsistent with each other. The only inconsistency referred to by counsel for plaintiff in error in their brief is an alleged inconsistency between that part of the first finding of fact, which reads as follows: "After the making of the instrument (termed a contract) by the parties, the defendant Hale proceeded and operated thereunder in good faith until the commencement of this action"—and a subsequent finding incidentally relating to the date on which work on the mining property ceased, reading as follows: "I find from the plaintiff's evidence that at the time of defendant's ceasing work in March, 1902, partly at least, and I think principally, in consequence of this failure on the part of plaintiff to supply him with funds as agreed, the corporation (plaintiff) was owing him $1,286, which has never been paid or tendered to him." We see no such inconsistency between the findings complained of as would warrant a reversal of this case on that ground alone.

The first finding deals with the good faith of Hale in relation to everything it was his duty to do under the contract; the second has relation principally to the laches of the plaintiff in error, and while incidentally finding that the defendant in error ceased

work in March, 1902, several months before the suit was commenced, yet the mere fact that he thus ceased work, for the reason stated in the finding, is not inconsistent with entire good faith on his part. All the other grounds of error argued by counsel in their brief require an examination of the evidence to determine whether they are well taken.

The record shows that on the 28th day of January, 1903, the court below made an order appointing the Honorable James F. Steck referee in said cause to settle the issues, hear the testimony, and make findings of fact and conclusions of law thereon; that on the 21st day of December, 1903, the cause came on for hearing before the referee, who heard the evidence in said cause, and on the 20th day of September, 1904, the referee made his report in said cause, which was filed in the office of the clerk of the district court. On the 15th day of October, 1904, on application of counsel for plaintiff in error, an order was made re-referring the same cause to the same referee for the purpose of allowing plaintiff's counsel to present the same to said referee and have allowed and certified by said court such exceptions as they desired to take to said report. In pursuance of this order counsel for plaintiff in error presented to the referee what they entitled, "Plaintiff's exceptions to report of referee." There is no attempt to preserve the testimony taken at the trial before the referee in the record by this bill of exceptions. As this must be done in order to present the errors complained of by the plaintiff in error it follows that, aside from the question of inconsistency in the two findings hereinbefore set out, there is no other error argued by counsel for plaintiff in error in their brief or presented to this court that may be reviewed. The evidence is not before us, and therefore we cannot review it.

Where the findings of fact of a referee are in the main based upon the issues joined by the pleadings, it must be presumed by this court, in the absence of the evidence from the record, that there was sufficient testimony introduced at the trial to warrant

the findings. The court may, on proper motion and exception to the conclusions of law of a referee, set the same aside, when they are inconsistent with the findings of fact, and render a different judgment, but the court may not set aside the findings of fact of the referee if they are substantially predicated upon the issues made by the pleadings, unless the evidence taken at the trial is preserved by bill of exceptions allowed and signed by the referee.

"Where a cause is referred to a referee to find and report the facts and conclusions of law to the court, and no bill of exceptions is allowed and signed by the referee, preserving the evidence, the court cannot consider the question of the sufficiency of the evidence to support the findings of the referee." (*M. Iralson v. Jacob Stang et al.*, 18 Okla., 423, 90 Pac. 446).

The judgment of the court below is affirmed.

All the Justices concur.